UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| JIMMY WILSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| VS. ) | No. 15-2262-JDT-cgc |
| ) | |
| RALPH HOPSON, ET AL., ) | |
| ) | |
| Defendants. ) | |

ORDER DISMISSING COMPLAINT,
CERTIFYING AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH
AND NOTIFYING PLAINTIFF OF APPELLATE FILING FEE

On April 20, 2015, Plaintiff Jimmy Wilson ("Wilson"), who is presently incarcerated at the Morgan County Correctional Complex in Wartburg, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 accompanied by a motion to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) The Court issued an order on April 21, 2015, granting leave to proceed *in forma pauperis* and assessing the civil filing fee pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 4.) The Clerk shall record the Defendants as Veteran Affairs ("V.A.") Hospital Police Officer Ralph Hopson; V.A. Hospital Police Officer C.M. Biggers; Shelby County Criminal Court Judge Chris Craft; Assistant Public Defender Jimmy Hale; and Amy Weirich, District Attorney General for the Thirtieth Judicial District at Memphis.

I. The Complaint

Wilson's complaint is divided into five claims, one concerning each Defendant. In the first claim, it is alleged that on December 29, 2010, Wilson told Defendant Hopson that Wilson was not committing fraud or theft.[1] (ECF No. 1 at 4.) Wilson alleges he was told by Larry Bradley, who is not a party to the complaint, that he could continue to get paid if he brought back a receipt each day from any store in Tupelo, Mississippi, to show that he was actually making the trip back and forth from Memphis to Tupelo. (*Id.*) Donna Alcone, who also is not a party to the complaint, told Wilson that he could use an address in Tupelo for mailing purposes only. (*Id.*) On December 15, 2010, after receiving confirmation that Wilson had an address in Tupelo, Alcone authorized Bradley to reimburse Wilson for his expenses from November 24, 2010 to December 15, 2010. (*Id.*) Despite this approval, Defendant Hopson said he was turning the matter over to the V.A.'s Inspector General's Office in Nashville, Tennessee. (*Id.*) On January 5, 2011, Hopson turned the case over to Defendant Biggers, stating that Wilson had used the Tupelo address from September 2, 2010 to December 29, 2010, even though he was actually living at the Memphis Union Mission the entire time. (*Id.* at 4-5.) However, Wilson states he told Hopson that he did not use his cousin's Tupelo address until December 3, 2010 and only then for important mail from the V.A., such as appointments. (*Id.*) Defendant Hopson did not send Defendant Biggers a copy of the voucher for cash

---

[1] Reading further into the complaint, it appears that Wilson was charged with theft for submitting allegedly fraudulent claims for reimbursable travel expenses from Tupelo, Mississippi to the V.A. Hospital in Memphis, Tennessee.

reimbursement, but rather provided a printout that showed only the date and time the money was paid out. (*Id.* at 5.) Wilson contends that if it was Defendant Hopson who sought the warrant for his arrest and indictment, then Defendant Hopson is responsible for violating Wilson's civil rights. (*Id.*)

Wilson's second claim alleges that Defendant Biggers violated his Fifth and Sixth Amendment rights. (*Id.* at 6.) On January 27, 2011, Defendant Biggers began conducting a criminal investigation. (*Id.*) On June 1, 2011, Biggers took the case to an Assistant U.S. Attorney for the Western District of Tennessee, who declined federal prosecution. (*Id.*) On June 30, 2011, Biggers took a typed statement from Defendant Hopson regarding Hopson's visits to Tupelo even though it was out of Hopson's jurisdiction. (*Id.*) Wilson contends that the receipt and acceptance of Hopson's report made Biggers's claims frivolous because Biggers did not properly investigate the matter. (*Id.*) Biggers also allegedly did not arrest Wilson in a timely manner. (*Id.*) Wilson alleges that if the case had been prosecuted fairly, it would have been brought in General Sessions Court and he would have been arrested and turned over to the Memphis Police Department at that time, instead of him being indicted three years later. (*Id.* at 6-7.)

Defendant Biggers allegedly stated in his report that Wilson was claiming mileage from Tupelo while actually staying at the Memphis Union Mission; however, Wilson alleges that in order to receive dinner from Memphis Union Mission you had to check in before six, attend chapel services, and then leave after chapel. (*Id.* at 7.) Wilson alleges that when Defendant Biggers found out about Wilson's criminal record, he did not further investigate, instead relying on Wilson's previous criminal record to prove any current

3

criminal activity. (*Id.*) When Biggers found out that Wilson had been arrested on a different charge on April 4, 2011, for which he remained incarcerated until December 19, 2011, Biggers never went to interview Wilson or arrest him. (*Id.*) Biggers also stated in his claim that the desk clerk at the Memphis Union Mission told him, under oath, that Wilson stayed there from November 2010 through May 2011, even though Wilson was in jail from April 2011 to December 2011. (*Id.* at 7-8.) Wilson contends this claim is really about his receiving money under a disability program for which he was not qualified but for which the V.A. itself has never sought reimbursement. (*Id.* at 8.) Wilson alleges that when Biggers prepared the report and gave it to the state, which indicted Wilson on October 17, 2013, Biggers violated Wilson's civil rights. (*Id.*) Biggers was a witness for the state on the indictment, which Wilson contends was not a true bill since it was three years after the initial investigation. (*Id.* at 6.)

In his third claim, Wilson alleges that on December 23, 2013, he was arrested by the Shelby County Sheriff's Department and told he was being charged with contempt of court and failure to pay court costs and fines in connection with a previous time-served plea agreement made before Defendant Craft on December 19, 2011. (*Id.* at 9.) However, Wilson alleges that Judge Craft knew there were no court costs or fines to be paid with that agreement and knew that Wilson's health had deteriorated signficantly at the time of the agreement. (*Id.*) From the time of his arrest until January 2, 2014, Wilson alleges he was not formally charged or given a bond. (*Id.* at 10.) When he went to court on January 2, 2014, Wilson was told by Judge Craft that he was being charged for theft of $1,000 to $10,000. (*Id.* at 10.) Wilson asked how he could be indicted on a charge for

4

which he was never arrested, and Judge Craft told him to remain quiet because Wilson's comments were being recorded by the court clerk and he should not say anything to incriminate himself. (*Id.*) Wilson alleges this was the beginning of Judge Craft's violation of Wilson's constitutional rights. (*Id.*)

On March 17, 2104, Wilson filed a motion to dismiss the indictment on the ground it was not a true bill because it listed Defendant Biggers as both the witness for the state and the prosecutor, but Judge Craft denied the motion, saying it was "garbage." (*Id.*) Wilson asked his attorney, Defendant Hale, to file a motion to dismiss, but he would not do so. (*Id.* at 11.) Wilson asked about a preliminary hearing in General Sessions Court, but Judge Craft said he did not have to give Wilson one, which Wilson contends was a violation of his civil rights. (*Id.*) Further, Judge Craft allowed Hale to reschedule court dates, thus delaying the trial. (*Id.*) Wilson asked Judge Craft for a new appointed attorney in July 2014, but his request was denied; however, Judge Craft did give Wilson thirty days to hire an attorney, which Wilson was unable to do. (*Id.* at 12.) When he went back to court on October 24, 2014, Wilson attempted to get a deal, due to his health, that would allow him to be released from jail with unsupervised probation and no fines, court costs or probation fees; however, Defendant Judge Craft stated that Wilson "would have to sign for the four years and then come back in 30 days for a probation [hearing.]" (*Id.* at 12-13.) However, Wilson "told Judge Craft that deal were defeating the purpose because of my health and if I lose the probation hearing I would be stuck with a four year parole time, in which I decline." (*Id.* at 13.) Wilson contends that he asked Judge Craft to relieve his attorney, Defendant Hale, because Wilson had filed criminal misconduct

5

charges against Hale in September 2014 by contacting the District Attorney's Office, the Tennessee Bureau of Investigation, and the U.S. Department of Justice; however, Judge Craft would not remove Hale as his attorney. (*Id.*)  Wilson further contends that he was not allowed to participate in a pre-trial conference or in jury selection and was not given the opportunity for a mental evaluation to determine his competency to stand trial. (*Id.* at 14.)

Wilson's fourth claim alleges that Defendant Hale violated his civil rights by engaging in various instances of misconduct throughout Wilson's criminal proceedings. (*Id.* at 15-17.)  Wilson allegedly has filed criminal charges against Hale for his misconduct. (*Id.* at 15.)  Wilson alleges that Defendant Hale failed to get copies of the vouchers from the V.A. which would have supported Wilson's defense and failed to find out why the case was allowed to proceed three years after the initial report, without an arrest and warrant and without a preliminary hearing. (*Id.* at 16-17.)  According to Wilson, it is "mighty funny" how he was arrested for failure to pay court costs and fines in December 2013 but that charge "just disappear[ed]" when he got to court in January 2014 and was told about the indictment. (*Id.* at 16.)

In his fifth and last claim, Wilson alleges that Defendant Weirich helped violate his civil rights by presenting the indictment to the grand jury even though she knew it was not a true bill, allowing the grand jury to sign the indictment without appointing a prosecutor from her office, and allowing his criminal case to proceed. (*Id.* at 18.)

Wilson seeks the dismissal of his criminal case (*id.* at 19) and the reimbursement of over $18,664.00, representing V.A. school benefits that he did not "get to complete along with the money that the V.A. school benefit took back" (*id.* at 20).

By way of background, on October 17, 2013, Wilson was indicted for theft of property from $1000 to $10000, in violation of Tennessee Code Annotated §§ 39-14-103. *See* jssi.shelbycountytn.gov (Indictment #13 05154). He was convicted by a jury on May 28, 2015 and sentenced on August 13, 2015. The case is currently on appeal. *Id.*

## II. Analysis

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the court applies the standards under Federal Rules of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681) (alteration in original). "[P]leadings that . . . are no more

7

than conclusions . . . are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"A complaint can be frivolous either factually or legally. Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted." *Hill*, 630 F.3d at 470 (citing *Neitzke v. Williams*, 490 U.S. 319, 325, 328-29 (1989)).

> Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief. Statutes allowing a complaint to be dismissed as frivolous give "judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327, 109 S. Ct. 1827 (interpreting 28 U.S.C. § 1915). Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, *Iqbal*, 129 S. Ct. at 1949-50, a judge does not have to accept "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness. *Neitzke*, 490 U.S. at 327-28, 109 S. Ct. 1827.

*Id.* at 471.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants and prisoners are not exempt from the requirements of the Federal Rules of Civil Procedure.

8

*Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, No. 09-2259, 2011 WL 285251, at *5 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)) (alteration in original); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

Wilson filed his complaint on the court-supplied form for actions under 42 U.S.C. § 1983. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial

9

officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

The complaint does not state a valid malicious prosecution claim against Defendants Hopson and Biggers. The requirements for a malicious prosecution claim under § 1983 are as follows:

> The Sixth Circuit "recognize[s] a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment," which "encompasses wrongful investigation, prosecution, conviction, and incarceration." *Barnes v. Wright*, 449 F.3d 709, 715-16 (6th Cir. 2006) (internal quotation marks omitted). The "tort of malicious prosecution" is "entirely distinct" from that of false arrest, as the malicious-prosecution tort "remedies detention accompanied not by absence of legal process, but by wrongful institution of legal process." *Wallace v. Kato*, 549 U.S. 384, 390, 127 S. Ct. 1091, 166 L. Ed. 2d 973 (2007) (internal quotation marks omitted). . . .
>
> To succeed on a malicious-prosecution claim under § 1983 when the claim is premised on a violation of the Fourth Amendment, a plaintiff must prove the following: First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant "ma[d]e, influence[d], or participate[d] in the decision to prosecute." *Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir. 2007); *see also McKinley v. City of Mansfield*, 404 F. 3d 418, 444 (6th Cir. 2005); *Darrah v. City of Oak Park*, 255 F.3d 301, 312 (6th Cir. 2001); *Skousen v. Brighton High Sch.*, 305 F.3d 520, 529 (6th Cir. 2002). Second, because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution, *Fox*, 489 F.3d at 237; *Voyticky*, 412 F.3d at 675. Third, the plaintiff must show that, "as a

10

> consequence of a legal proceeding," the plaintiff suffered a "deprivation of liberty," as understood in our Fourth Amendment jurisprudence, apart from the initial seizure. *Johnson v. Knorr*, 477 F.3d 75, 81 (3d Cir. 2007); *see Gregory v. City of Louisville*, 444 F.3d 725, 748-50 (6th Cir. 2006) (discussing the scope of "Fourth Amendment protections . . . beyond an initial seizure," including "continued detention without probable cause"); *cf. Heck v. Humphrey*, 512 U.S. 477, 484, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994 ) ("[U]nlike the related cause of action for false arrest or imprisonment, [an action for malicious prosecution] permits damages for confinement imposed pursuant to legal process."). Fourth, the criminal proceeding must have been resolved in the plaintiff's favor. *Heck*, 512 U.S. at 484, 114 S. Ct. 2364 ("One element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused.").

*Sykes v. Anderson*, 625 F. 3d 294, 308-09 (6th Cir. 2010) (additional citations and footnote omitted).

Wilson was indicted for theft of property in Shelby County Criminal Court case number 13-05154. The fact that Wilson was ultimately indicted by a grand jury demonstrates the existence of probable cause for the charges. "[T]he finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause for the purpose of holding the accused to answer." *Higgason v. Stephens*, 288 F. 3d 868, 877 (6th Cir. 2002) (quoting *Ex parte United States*, 287 U.S. 241, 250 (1932)). In light of the grand jury indictment, any malicious prosecution claim fails because Wilson cannot show the absence of probable cause. Furthermore, Wilson was convicted on the charge; therefore, he cannot show that the criminal proceeding was resolved in his favor.

Wilson has no claim against Defendant Craft. It is well settled that judges, in the performance of their judicial functions, are absolutely immune from civil liability.

*Mireles v. Waco*, 502 U.S. 9, 9-10 (1991); *Stump v. Sparkman*, 435 U.S. 349, 363 (1978); *Bright v. Gallia Cnty., Ohio,* 753 F.3d 639, 648-49 (6th Cir. 2014); *Leech v. DeWeese,* 689 F.3d 538, 542 (6th Cir. 2012). Whether a judge or other official is entitled to absolute immunity in a given case turns on a "functional" analysis. *Harlow v. Fitzgerald*, 457 U.S. 800, 810-11 (1982). The "touchstone" for applicability of absolute judicial immunity is "performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights." *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435-36 (1993). The allegation is that Defendant Craft's rulings and orders during the criminal court proceeding violated Wilson's civil rights. Clearly, these actions were within the scope of Judge Craft's judicial function; therefore, Wilson's claims against Defendant Craft are barred by judicial immunity.

Wilson does not have a § 1983 claim against his defense counsel, Defendant Hale. Attorneys, whether court appointed or privately retained, do not act under color of state law for purposes of § 1983. *Smith v. Hilltop Basic Res., Inc.*, 99 F. App'x 644, 646 (6th Cir. 2004); *Harmon v. Hamilton Cnty. Court of Common Pleas*, 83 F. App'x 766, 767 (6th Cir. 2003) ("Here, the defendant attorneys did not act under color of state law as privately retained attorneys, although the acts alleged related to state court litigation."); *Otworth v. Vaderploeg*, 61 F. App'x 163, 165 (6th Cir. 2003) ("A lawyer representing a client is not, by virtue of being an officer of the court, a state actor under color of state law within the meaning of § 1983."); *Catz v. Chalker*, 142 F.3d 279, 289 (6th Cir. 1998); *see Polk Cnty. v. Dodson*, 454 U.S. 312 (1981) (holding that public defender does not act

under color of state law for purposes of § 1983); *McCord v. Bailey*, 636 F.2d 606, 613 (D.C. Cir. 1979) (applying *Polk County* to retained criminal lawyers).

Wilson also cannot sue Defendant Weirich for money damages arising from the institution of criminal proceedings against him. Prosecutors are absolutely immune from suit for actions taken in initiating and pursuing criminal prosecutions because that conduct is "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976). "A prosecutor's decision to initiate a prosecution, including the decision to file a criminal complaint or seek an arrest warrant, is protected by absolute immunity." *Howell v. Sanders*, 668 F.3d 344, 351 (6th Cir. 2012). Wilson's claim for money damages against Defendant Weirich for these activities is barred by absolute prosecutorial immunity. *Id.* at 427-28; *Burns v. Reed*, 500 U.S. 478, 490-492 (1991); *Grant v. Hollenbach*, 870 F.2d 1135, 1137 (6th Cir. 1989); *Jones v. Shankland*, 800 F.2d 77, 80 (6th Cir. 1986). Therefore, she cannot be sued for malicious prosecution. *O'Neal v. O'Neal*, 23 F. App'x 368, 370 (6th Cir. 2001); *see also Spurlock v. Thompson*, 330 F.3d 791, 797 (6th Cir. 2004) (noting that "prosecutors are absolutely immune from many malicious prosecution claims"); *Roybal v. State of Tenn. Dist. Attorney's Office*, 84 F. App'x 589 (6th Cir. 2003).

When a prisoner seeks to challenge his conviction and the validity and/or duration of his confinement, his sole remedy is a petition for a writ of habeas corpus. *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *see also Muhammad v. Close*, 540 U.S. 749, 750 (2004) (per curiam) ("Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus."). The Court expressly declines

to address the complaint as a habeas petition because Wilson has not exhausted his state remedies, as his case is currently on direct appeal. A habeas petitioner must first exhaust available state remedies before requesting relief under § 2254. *See*, *e.g.*, *Granberry v. Greer*, 481 U.S. 129, 133-34 (1987); *Rose v. Lundy*, 455 U.S. 509, 515-16 (1982). *See also* Rule 4, Rules Governing § 2254 Cases.

Any claim for money damages arising from Wilson's conviction are barred by *Heck v. Humphrey*, in which the Supreme Court held that:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

512 U.S. 477, 486-87 (1994) (footnotes omitted). *See also Schilling v. White*, 58 F.3d 1081, 1086 (6th Cir. 1995) (same). Wilson has no cause of action under § 1983 if the claims in that action hinge on factual proof that would call into question the validity of a state court order directing his confinement unless and until any prosecution is terminated

in his favor, his conviction is set aside, or the confinement is declared illegal. *Heck*, 512 U.S. at 481-82; *Schilling*, 58 F.3d at 1086.

Here, *Heck* applies to bar any claims for damages arising from Wilson's criminal prosecution and conviction. Wilson must have any conviction overturned on direct appeal or via collateral attack before any claim for damages can accrue.

For all of the foregoing reasons, Wilson's complaint is subject to dismissal in its entirety for failure to state a claim on which relief can be granted.

### III. Standard for Leave to Amend

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, No. 12-1403, 2013 WL 646489, at *1 (1st Cir. Feb. 22, 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *Brown*, 2013 WL 646489, at *1; *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every *sua sponte* dismissal entered without prior notice to the plaintiff automatically must be reversed. If it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile, then a *sua sponte* dismissal may stand."); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) ("*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile"); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree

with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."). In this case, because the deficiencies in Wilson's complaint cannot be cured, leave to amend is not warranted.

IV. Conclusion

The Court DISMISSES Wilson's complaint for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Leave to amend is DENIED because the deficiencies in Wilson's complaint cannot be cured.

Pursuant to 28 U.S.C. §1915(a)(3), the Court must also consider whether an appeal by Wilson in this case would be taken in good faith. The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). The test for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any issue that is not frivolous. *Id.* It would be inconsistent for a district court to determine that a complaint should be dismissed prior to service on the Defendants, but has sufficient merit to support an appeal *in forma pauperis*. *See Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case for failure to state a claim also compel the conclusion that an appeal would not be taken in good faith. Therefore, it is CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Wilson would not be taken in good faith.

The Court must also address the assessment of the $505 appellate filing fee if Wilson nevertheless appeals the dismissal of this case. A certification that an appeal is not taken in good faith does not affect an indigent prisoner plaintiff's ability to take

advantage of the installment procedures contained in § 1915(b). *See McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997), *partially overruled on other grounds by LaFountain*, 716 F.3d at 951. *McGore* sets out specific procedures for implementing the PLRA, 28 U.S.C. § 1915(a)-(b). Therefore, Wilson is instructed that if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in *McGore* and § 1915(a)(2) by filing an updated *in forma pauperis* affidavit and a current, certified copy of his inmate trust account for the six months immediately preceding the filing of the notice of appeal.

For analysis under 28 U.S.C. § 1915(g) of future filings, if any, by Wilson, this is the first dismissal of one of his cases as frivolous or for failure to state a claim. This "strike" shall take effect when judgment is entered. *Coleman v. Tollefson*, 135 S. Ct. 1759, 1763-64 (2015).

The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

                                          s/ **James D. Todd**
                                         JAMES D. TODD
                                         UNITED STATES DISTRICT JUDGE